**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| CATALENT PHARMA SOLUTIONS, LLC | Case No. ____________ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| BEN WOODARD | |
| Defendant. | |

Plaintiff Catalent Pharma Solutions, LLC ("Catalent," the "Company" or "Plaintiff"), by and through its undersigned counsel, brings this Complaint against Ben Woodard ("Defendant") and states as follows:

## NATURE OF THE ACTION

1. Defendant is a former Catalent employee who has admitted to stealing a large volume of confidential and proprietary data belonging to the Company. Defendant then brazenly seeks to blackmail Catalent, in writing, into paying him a $40 million severance, and has threatened to disclose stolen Company information if Catalent does not do so.

2. The series of events that led to Defendant's termination included a minor one-vehicle accident involving Defendant on Company property. While the Company determined that Defendant was at fault, it nonetheless offered to pay Defendant for the damages to his car. Defendant unreasonably escalated the matter, and entered the matter in an incident management system asserting damages that were more than 50 times greater than what he initially indicated. The Company determined that Defendant made a report regarding the matter in bad faith and

engaged in abuse of the Company systems. After a complete breakdown of the employee relationship with Defendant, the Company terminated his employment and offered him a four-week severance package.

3. Unable to move on from the accident and dissatisfied with the severance offered, Defendant decided to steal confidential Company information in an apparent effort to increase his bargaining position regarding his severance package. On the day he was terminated, Defendant transferred more than 300 files, many of which contained sensitive company information about highly proprietary and confidential business processes for the manufacturing of gene therapy products, in violation of Company policies that Defendant acknowledged and with which he agreed to abide.

4. On July 18, 2025, Defendant sent senior executives of the Company an email—attached hereto as Appendix 5 to the attached Declaration of Douglas Arone ("Exhibit A")—seeking $40,000,900 in a lump sum payment to "resolve[] confidentially" the matter. In his email, Defendant stated that he now has possession of Catalent's "documents that a lot of people would be very interested in seeing" and he threatened to disclose the documents to regulatory bodies, the media, university peers, and his "entire professional network spanning across federal, academic, and industry sectors."

5. Catalent refuses to be extorted by Defendant, and thus it brings this suit seeking an order calling for the return of its confidential and proprietary data stolen by the Defendant.

## THE PARTIES

6. Plaintiff is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

7. Defendant is a natural person and resident of Maryland.

8. Defendant worked at Plaintiff's facility in Harmans, Maryland from July 2023 to July 2025.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332 based on diversity of citizenship because Plaintiff is a citizen of Delaware and New Jersey and Defendant is a resident of Maryland, and because the amount in controversy exceeds the sum or value or $75,000, exclusive of interest and costs.

10. The Court also has subject matter jurisdiction over Count 1, for violation of the federal Defend Trade Secrets Act ("DTSA"), pursuant to 28 U.S.C. § 1331 based on federal question jurisdiction. The Court has supplemental subject matter jurisdiction over the state law claims (Claims 2 through 5 below) pursuant to 28 U.S.C. § 1367(a), as the state law causes of action are so "related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

11. This Court has personal jurisdiction over Defendant because he lives and worked in Maryland and committed tortious acts within Maryland.

12. Defendant committed tortious acts and other acts causing injury to Plaintiff within Maryland.

13. Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Maryland. The causes of action stated herein all arise out of Defendant's contacts within Maryland.

## STATEMENT OF FACTS

### I. Background

14. Plaintiff is a corporation that provides pharmaceutical development and manufacturing solutions for drugs, protein-based biologics, cell and gene therapies, vaccines, and consumer health products at approximately fifty facilities across four continents.

15. Through its extensive capabilities, growth-enabling capacity, and deep expertise in product development, regulatory compliance, and clinical trial and commercial supply, Plaintiff can help its customers quickly bring products to the market. The Company has supported development and manufacturing for more than half of new drug products approved by the U.S. Food and Drug Administration (the "FDA") in the last decade. The Company's development and manufacturing platforms, its formulation, supply, and regulatory expertise, and its broad and deep development and manufacturing know-how enable its customers to bring to market more products and better treatments for patients and consumers.

16. The Company produces nearly 70 billion unit doses for nearly 8,000 customer pharmaceutical and consumer health products yearly.

17. In fiscal year 2024, the Company conducted business with 88 of the top 100 branded drug and consumer health marketers and 82 of the top 100 biologics marketers, measured on a global basis.

18. Defendant was employed by Catalent as a Senior Engineer from July 2023 to July 2025 in Harmans, Maryland, near Baltimore/Washington International Airport.

19. The Harmans facility focuses almost exclusively on producing gene therapies, which is a highly specialized and complex process involving many Catalent and client proprietary techniques.

20. In connection with his employment, Defendant acknowledged and agreed to comply with various policy documents and agreements that prohibit the theft and disclosure of confidential, proprietary information, including:

a. Catalent Confidentiality Agreement (Full-Time or Part-Time Employee) (signed by Defendant on July 21, 2023), in which Defendant agreed not to disclose any "Confidential Information" to any person, or to use any Confidential Information except "for furthering the business of Employer." That agreement further provides that, in the event of a breach, the Employer's remedy would be "inadequate, and that it is entitled to Immediate Injunctive relief" and to reimburse Catalent for its costs. Appendix 1 to Exhibit C, Declaration of Douglas Arone.

b. Cybersecurity Policy v. 8.0 (acknowledged by Defendant as reviewed on October 27, 2024), which provides that "Access to non-public information is intended only for those who demonstrate a legitimate business requirement ("Need to Know") to the Information Owner. The Cybersecurity Policy also provides that information access and authorization shall also follow the recognized principle of "Least Privilege," which prescribes only those privileges which are essential to perform an authorized function . . . ." Further, the policy provides that "All Catalent employees, business partners, and contractors are responsible for protecting Catalent information and the information entrusted to Catalent by its customers, business partners, and other entities for which Catalent has a contracted, legal, or regulatory responsibility." Appendix 3 to Exhibit C, Declaration of Douglas Arone.

c. IT Acceptable Use (acknowledged by Defendant as reviewed on August 8, 2023), which provides that Catalent permits "reasonable, limited use of company assets, . . . provided that such use does not interfere with official business duties, violate any company policies, or comprise the security of company assets." The IT Acceptable Use document also states that a user must "[n]ever forward non-public company information to any personal e-mail, social medial, or similar account." Declaration of Douglas Arone, Appendix 4 to Exhibit C, Declaration of Douglas Arone.

21. The Confidentiality Agreement also recites statutory language from the federal Defend Trade Practice Act which authorizes plaintiffs to seek exemplary damages if a person violates the confidential agreement (as is the case here):

> Notwithstanding the foregoing, pursuant to 18 U.S.C. § 1833(b), the Parties to this Agreement have the right to disclose in confidence trade secrets to Federal, State, and local government officials, or to an attorney, for the sole purpose of reporting or Investigating a suspected violation of law. The Parties also have the right to disclose trade secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure. 18 U.S.C. § 1833(6) states: "An Individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that—(A) Is made—(I) in confidence to a Federal, State, or local government official, either directly or Indirectly, or to an attorney; and (II) solely for the purpose of reporting or Investigating a suspected violation of law; or (B) is made In a complaint or other document filed in a lawsuit or other proceeding, if such filing Is made under seal." Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosures of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

Appendix 1 to Exhibit C, Declaration of Douglas Arone; see 18 U.S.C. 18 U.S.C. § 1833(b).

22. As explained in more detail below, Defendant violated each of the information confidentiality agreements and policies referenced above in Paragraph 18.

**II. Defendant's Theft of Catalent Data and Preceding Events**

23. Beginning in the first few months of 2025, Defendant began exhibiting confrontational behaviors in the workplace. Defendant's manager raised to more senior management that Defendant was becoming confrontational, particularly with respect to conversations about compliance. Exhibit A, Declaration of Scott Kelly at ¶ 5. Defendant also repeatedly elevated minor disagreements to the Company's heads of departments. *Id.*

24. On May 12, 2025, Defendant was involved in a single car accident with the gate(s) of the Company parking lot. Appendix 5 to Exhibit C, Declaration of Doug Arone.

25. The Company investigated the accident and concluded that Defendant had caused the accident. *Id.* No changes were made to the structure or operations of the gate after the accident. *Id.*

26. While the Company determined that Defendant was at fault, it nonetheless offered to pay Defendant for his damages, which he indicated were less than $1,000, in an effort to de-escalate the situation. *Id.*

27. Defendant continued to escalate the matter, and he questioned the integrity of those who disagreed with him. *Id.*

28. On June 29, 2025, at approximately midnight, Defendant reported the accident in the Company's incident management system, indicating a "Level C" severity event, indicating damage in excess of $50,000 and triggering global notification, with a potential severity of "Level A – Catastrophic Incident." *Id.*

29. In an email on July 3, 2025, at 2:45 pm Eastern Time, the Company informed Defendant that it had concluded that his actions constituted an "incident report made in bad faith and an abuse of the system." The Company concluded that the event described above had

resulted in a "complete breakdown of the employment relationship," and it terminated defendant's employment effective immediately and notified him that his Catalent access would be revoked by the end of the day. The Company offered Defendant a four-week post-termination pay severance package. *Id.*

30. In the minutes that followed after Defendant received his termination email, from 2:49 pm to 3:11 pm, Defendant forwarded from his Company email to his personal email 11 conversations containing the Company's confidential information. Appendix 1 to Exhibit B, Declaration of Jody Jenkins.

31. Over the next few hours, Defendant transferred 360 documents, including documents containing confidential Catalent information and trade secrets, from his Catalent-issued computer. Appendix 1 to Exhibit A, Declaration of Scott Kelly.

32. The documents that Defendant stole, in violation of Company policies and agreements with which he had agreed to comply, contain highly confidential and proprietary information. This information includes, among other items:

- Catalent's standard operating procedures and design schematics;
- Catalent's platform processes that contain all of the components and required knowledge associated with a particular product. The Company relies on the proprietary nature of these platform processes as the speed with which the Company can leverage them to manufacture products helps attract clients;
- Impact assessments related to process deviations associated with specific products and processes pertaining to particular clients;
- Memoranda summarizing root causes and corrective actions taken with respect to certain products for particular clients;
- Process flow diagrams depicting Catalent's manufacturing processes;
- Company interactions with the Food and Drug Administration ("FDA").

Exhibit A, Declaration of Scott Kelly at ¶ 9.

33. The documents stolen by Defendant cover complex production processes that would be highly damaging to Catalent's business and the reputation of Catalent or its customers if released to the public. Not only would releasing the documents expose confidential business information about Catalent and its customers' processes, it could also enable Catalent customers' competitors to reverse-engineer specific drugs and could expose results of intermediate drug-testing. This exposure would also harm Catalent's ability to serve future customers by undermining Catalent's reputation for confidentiality and security. *Id.* at ¶ 10.

34. On Friday, July 18, 2025, Defendant sent an email to senior Company officials claiming to have stolen confidential Catalent business information. Defendant threatened to release this confidential information if Catalent did not pay him a lump sum of $40,000,900 (forty million nine hundred dollars) by 5:00 p.m. EST on Monday July 21, 2025. Appendix 5 to Exhibit C, Declaration of Doug Arone.

35. On Monday, July 21, 2025, Rob Ciolek, Vice President and Deputy Chief Compliance Officer at Catalent, responded to Mr. Woodard, stating that Catalent was looking into the allegations contained in Mr. Woodard's email. Mr. Woodard subsequently responded on Tuesday, July 22, 2025, reiterating his threat to release the documents if Catalent did not pay him the lump sum he demanded by noon today (July 23, 2025). *Id.*

36. Defendant has also updated his LinkedIn biography to describe himself as a self-employed "Chief Vision Engineer" with a job description stating, in part, "when the veil lifts, you'll wish you saw it coming." Appendix 6 to Exhibit C, Declaration of Doug Arone.

37. On July 22, 2025, the Company informed the Federal Bureau of Investigation of Defendant's conduct.

## III. Irreparable Harm

38. Defendant's misappropriation of Catalent's confidential and proprietary information is causing Catalent significant harm. A disclosure of the stolen data to a third party would result in great reputational and business harm to Plaintiff if that data were to enter the market. Moreover, a disclosure of the stolen data would result in competitors of Catalent's customers learning about processes used at Catalent and by its clients.

39. As noted above, the Catalent Confidentiality Agreement signed by Defendant provides that Defendant agreed not to disclose any "Confidential Information" to any person, or to use any Confidential Information except "for furthering the business of Employer," and that Catalent's remedy would be "inadequate, and that it is entitled to Immediate Injunctive relief" and to reimburse Catalent for its costs. Appendix 1 to Exhibit C, Declaration of Doug Arone.

40. Catalent maintains robust cybersecurity policies, trainings, and controls. As part of employee onboarding, employees are required to read and acknowledge Catalent's Standards of Business Conduct Policy and Technology Acceptable Use Policy, with required re-acknowledgments yearly thereafter. Employees must also undergo technology training, which covers acceptable uses of company technology. Catalent maintains restrictions for employees recording company information and prohibits employees from accessing company documents after their employment with the company has ended. Exhibit B, Declaration of Jody Jenkins, ¶ 3.

41. Catalent also utilizes commercial cybersecurity solutions to protect against unauthorized access to company information, including Microsoft Defender XDR and Sentinel. Catalent records all user activity on company networks. Declaration of Jody Jenkins, ¶ 4.

42. Plaintiff has not made public, and has no intention to make public, the stolen documents.

## FIRST CLAIM FOR RELIEF
## (Defend Trade Secrets Act, 18 U.S.C. §§ 1831 - 1839)

43. Plaintiff repeats and alleges Paragraphs 1 – 42 as if repeated herein.

44. Plaintiff engages in a fiercely competitive pharmaceutical industry that requires it to maintain and protect its trade secrets to ensure its competitive advantage.

45. Catalent maintains information regarding technical manufacturing processes, quality control, customer information, and other information that was compiled over years to ensure it has a competitive advantage in the industry. Because of the importance of this information, the Company maintains such trade secrets in a confidential manner, and requires employees to acknowledge a confidentiality agreement and policies regarding the confidentiality of the documents. Nevertheless, Defendant improperly accessed the confidential information.

## SECOND CLAIM FOR RELIEF
## (Maryland Uniform Trade Secrets Act, Md. Com. Code § 11-1201 - 1209)

46. Plaintiff repeats and alleges Paragraphs 1 – 45 as if repeated herein.

47. Plaintiff engages in a fiercely competitive industry that requires it to maintain and protect its trade secrets to ensure its competitive advantage in the industry.

48. Catalent maintains information regarding technical manufacturing processes, quality control, customer information, and other information that contain information compiled over years to ensure it has a competitive advantage in the industry.

49. Because of the importance of this information, the Company maintains such trade secrets in a confidential manner, and requires employees to acknowledge a confidentiality agreement and policies regarding the confidentiality of the documents. Nevertheless, Defendant improperly accessed confidential information in Maryland.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract)**

50. Plaintiff repeats and alleges Paragraphs 1 – 49 as if repeated herein.

51. Defendant signed a Catalent Confidential Agreement in which Defendant agreed not to disclose any "Confidential Information" to any person, or to use any Confidential Information except "for furthering the business of [Catalent]." That agreement further provides that, in the event of a breach, the Employer's remedy would be "inadequate, and that it is entitled to Immediate Injunctive relief" and to reimburse Catalent for its costs. Declaration of Douglas Arone, Exhibit 2.

52. Defendant acknowledged a Cybersecurity Policy v. 8.0 (acknowledged on October 27, 2024), which provides that "Access to non-public information is intended only for those who demonstrate a legitimate business requirement ("Need to Know") to the Information Owner. Information access and authorization shall also follow the recognized cybersecurity principle of "Least Privilege," which prescribes only those privileges which are essential to perform an authorized function . . . ." Declaration of Douglas Arone, Exhibit 3.

53. Defendant acknowledged a Cybersecurity Policy v. 8.0 (acknowledged on October 27, 2024), which provides that "All Catalent employees . . . are responsible for protecting Catalent information and the information entrusted to Catalent by its customers, business partners, and other entities for which Catalent has a contracted, legal, or regulatory responsibility." Declaration of Douglas Arone, Exhibit 3.

54. Defendant knowingly failed to maintain confidential information subject to the IT Acceptable Use (acknowledged on August 8, 2023), which provides that Catalent permits "reasonable, limited use of company assets, . . . provided that such use does not interfere with

official business duties, violate any company policies, or comprise the security of company assets." Declaration of Douglas Arone, Exhibit 4.

55. Defendant knowingly breached these agreements, resulting in injury to Plaintiff.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**

56. Plaintiff repeats and alleges Paragraphs 1 – 55 as if repeated herein.

57. Defendant breached fiduciary duties of loyalty to the Company, his employer, and agreed to be bound by confidentiality requirements in agreements and policies that survived Plaintiff's termination.

58. Defendant breached the duties described above by not maintaining in confidence confidential Company information, in violation of agreements and policies and agreements to which he agreed to be bound.

59. Plaintiff has suffered harm based on Defendant's threatened disclosure of the information.

**FIFTH CLAIM FOR RELIEF**
**(Conversion)**

60. Plaintiff repeats and alleges Paragraphs 1 – 69 as if repeated herein.

61. Defendant has admitted to accessing and taking documents and information belonging to Plaintiff, in violation of the Defendant's clear contractual obligations to maintain confidentiality of the material, resulting in damage to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court enter an order:

A. temporarily and permanently enjoining Defendant from disclosing or otherwise using Company confidential and proprietary information in violation of Company policy and agreements, and requiring Defendant to return the stolen data;

B. awarding punitive and/or exemplary damages;

C. awarding incidental and consequential damages;

C. requiring Defendant to pay pre-judgment interest;

D. awarding attorneys' fees and costs; and

E. granting any other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: July 23, 2025

Respectfully submitted,

*/s/ Paul A. Solomon*

SKADDEN, ARPS, SLATE
MEAGHER & FLOM LLP
Paul A. Solomon (Bar No. 19920)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7975
paul.solomon@skadden.com

*Counsel for Plaintiff Catalent Pharma Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of July 2025, copies of the Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction were filed via CM/ECF and supplemental Certificate of Service will be provided once a Summons is generated and service is effectuated on Defendant.

/s/ *Paul A. Solomon*
Paul A. Solomon