**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| CATALENT PHARMA | * | |
| SOLUTIONS, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | **Civ. No. MJM-25-2394** |
| v. | * | |
| | * | |
| BEN WOODARD, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Catalent Pharma Solutions, LLC ("Plaintiff") filed a civil complaint against Ben Woodard ("Defendant") alleging violations of state and federal trade secrets laws; breach of contract; breach of fiduciary relief; and conversion. ECF No. 1 (Compl.). This matter is before the Court on Plaintiff's emergency motion for a temporary restraining order ("TRO"). ECF No. 2. For the reasons set forth below, the Court shall grant the motion, in part, and enter a TRO.

## I.    BACKGROUND

Plaintiff is a global Contract Development and Manufacturing Organization ("CDMO") that develops, manufactures, and supplies highly sophisticated gene therapies for major pharmaceutical companies. ECF No. 6, ¶ 3. Plaintiff has a facility in Harmans, Maryland, where Plaintiff manufactures gene therapy treatments involving specialized customer-specific confidential information. *Id.* ¶ 4. Plaintiff maintains many documents related to its customers'

1

manufacturing formulas and processes, including if "deviations" occur and any investigation into that "deviation." *Id.* These documents contain sensitive, confidential information. *Id.*

Defendant began his employment with Plaintiff in July 2023. ECF No. 8-1. Plaintiff required Defendant to sign a Confidentiality Agreement that prevents employees from disclosing confidential information learned through his employment. *Id.* Defendant was also required periodically to review and acknowledge compliance with Plaintiff's IT and cybersecurity policies. ECF Nos. 8-3 & 8-4. These policies include an agreement that a user of Plaintiff's systems "[n]ever forward non-public company information to any personal e-mail, social media, or similar account." ECF No. 8-4 at 6.

On July 3, 2025, Plaintiff informed Defendant via email that his employment was terminated, effective immediately. ECF No. 8-5 at 6–7. The email cites as reasons for Defendant's termination an incident report Plaintiff determined that Defendant made in bad faith and a "complete breakdown of the employment relationship." *Id.* As part of his severance package, Plaintiff offered Defendant four weeks of post-termination pay. *Id.* In the minutes following his termination, Defendant forwarded from his company email to his personal email eleven conversations that contain confidential information. ECF No. 7, ¶ 6; ECF No. 7-1. Defendant then downloaded and removed copies of over 300 files from Plaintiff's systems. ECF No. 6, ¶¶ 6–7; ECF No. 6-1. These files contain confidential information, including, but not limited to, Plaintiff's standard operating procedures and design schematic, client information, impact assessments for gene therapy production, client- and product-specific deviations, and company interactions with the Food and Drug Administration. ECF No. 6, ¶ 7.

On July 18, more than two weeks following Defendant's termination, Defendant emailed some of Plaintiff's executive officers asking for a severance reevaluation, and stating that if he did

not receive a response by 5:00 pm on Monday, July 21, 2025, he would "present evidence that would trigger full-scale investigations across multiple federal agencies." ECF No. 8-5 at 4–6. Defendant stated that in order to prevent disclosure of his perceived issues, including regulatory compliance violations, he required a lump sum payment of over $40 million. *Id.* The email ended by stating that he holds "2TB worth of documents that a lot of people would be very interested in seeing." *Id.* On July 21, Plaintiff responded by stating that Defendant's email raised serious allegations that it needed more time to look into. *Id.* at 3–4.

On July 22, 2025, Defendant stated in an email that Plaintiff had "until noon tomorrow to re-evaluate [his] severance package" or else he would send the confidential information he took global. *Id.* at 1–3. Defendant stated that after noon on July 22, 2025, "it's out of [his] hands." *Id.*

On July 23, 2025, Plaintiff filed a civil complaint against Defendant asserting five claims for damages: (1) violation of the Defend Trade Secrets Act; (2) violation of the Maryland Uniform Trade Secrets Act; (3) breach of contract; (4) breach of fiduciary duty; and (5) conversion. ECF No. 1. On the same date, Plaintiff filed an emergency motion for a TRO and preliminary injunction to enjoin Defendant from "accessing, using, or disclosing Plaintiff's confidential and proprietary information[,]" and directing Defendant to "immediately return to Plaintiff all removed Company confidential and proprietary information in Defendant's possession or control." ECF Nos. 2, 2-2.

## II.    STANDARD OF REVIEW

"The purpose of a TRO is to 'preserve the status quo only until a preliminary injunction hearing can be held.'" *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 431 (D. Md. 2024) (quoting *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999)). Awarding this extraordinary remedy requires "a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standards for granting a

TRO and granting a preliminary injunction are the same. *Maages Auditorium v. Prince George's Cnty.*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014), *aff'd*, 681 F. App'x 256 (4th Cir. 2017). A party seeking a TRO must demonstrate (1) that it is likely to succeed on the merits of its claims, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in its favor, and (4) that an injunction is in the public interest. *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) (citing *Winter*, 555 U.S. at 20).

## III.    DISCUSSION

### A.  Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits of its claims premised upon violations of state and federal trade secrets laws.[1]

"To establish misappropriation of a trade secret under federal law and Maryland state law, [the plaintiff] must demonstrate that the documents at issue are trade secrets, and that [the defendant] misappropriated those trade secrets."[2] *Brightview Grp. LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020) (citing 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); Md. Code Ann., Com. Law § 11-1201(c)). Under the Defend Trade Secrets Act ("DTSA"), courts may grant an injunction to prevent "actual or threatened misappropriation." 18 U.S.C. § 1836(b)(3)(A).

To prevail on a misappropriation claim under the DTSA, a plaintiff must show "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023). A "trade secret" is defined as:

---

[1] The Court need not reach the merits of Plaintiff's other claims and, at this time, makes no finding as to its likelihood of success on those claims.

[2] The Maryland state law equivalent, the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law § 11-1201(c), is functionally identical to the federal Defend Trade Secrets Act. *ClearOne*, 710 F. Supp. 3d at 435.

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

> (A) the owner thereof has taken reasonable measures to keep such information secret; and

> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). Further, as relevant here, the term "misappropriation" means:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (B) disclosure or use of a trade secret of another without express or implied consent by a person who--

>> (i) used improper means to acquire knowledge of the trade secret;

>> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--

>>> * * *

>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]

*Id.* § 1839(5). "A person misappropriates trade secrets when they (1) acquire a trade secret that they know or have reason to know was acquired by improper means, or (2) use or disclose the trade secret after acquiring it through improper means." *ClearOne*, 710 F. Supp. 3d at 435. "The

plaintiff can show misappropriation simply by demonstrating that the defendant acquired the trade secret by improper means, even if the plaintiff cannot show use of that trade secret." *Id.* (citation modified).

Here, the confidential information Plaintiff contends that Defendant stole, and is using as leverage against Plaintiff, includes internal business operating procedures, technical and engineering schematics, proprietary processes and platforms, customer formulas, designs, techniques, among others. ECF No. 6, ¶ 7. The Court finds that these documents are likely to meet the definition of a "trade secret," *see* 18 U.S.C. § 1839(3); that Plaintiff has taken reasonable measures to keep information contained within these documents secret, ECF No. 7, ¶¶ 3–4; ECF No. 8, ¶¶ 5–6; ECF Nos. 8-3, 8-4; and that this information carries economic value, as it is not generally known and would be valuable to Plaintiff's competitors. Plaintiff is likely to establish that this confidential information implicates interstate and foreign commerce because it concerns pharmaceutical development that is central to its multinational business and sensitive information about customers who conduct business across the globe.

The Court finds that Plaintiff is likely to establish that Defendant misappropriated its trade secrets. Defendant signed a Confidentiality Agreement that prohibits him from disclosing Plaintiff's confidential information and removing confidential information from Plaintiff's premises or possession without express authorization. ECF No. 8-1. This agreement states that, following termination, Defendant is not to retain any copies of Plaintiff's confidential information. *Id.* However, following his termination, Defendant forwarded emails containing confidential information to his personal email account and downloaded hundreds of files containing confidential documents. ECF No. 6, ¶¶ 6–7; ECF No. 6-1. He has also made clear that he intends

to disclose the likely misappropriated trade secrets without Plaintiff's permission, to cause financial and reputational harm to Plaintiff. ECF No. 8-5.

Accordingly, this Court finds that Plaintiff is likely to succeed on the merits of its trade secret misappropriation claims.

### B. Irreparable Harm

Plaintiff has also established a likelihood of irreparable harm in the absence of preliminary injunctive relief. "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent'" and that the harm "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (citations omitted). "[T]he loss of goodwill in the relevant industry, loss of customers, and loss of the ability to attract new customers are difficult to quantify in terms of money damages and thus may justify injunctive relief." *ClearOne*, 710 F. Supp. 3d at 436 (citing *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 442 F. App'x 776, 785 (4th Cir. 2011)). "Additionally, courts frequently grant injunctions when there is a substantial risk that the defendants will continue to divulge or misappropriate trade secrets in the absence of court action." *Id.* (citing *Brightview Grp.*, 441 F. Supp. 3d at 138).

Here, Defendant is alleged to have stolen highly confidential and proprietary information, including trade secrets, about Plaintiff's and its customers' manufacturing processes. ECF No. 6, ¶¶ 6–7; ECF No. 6-1; ECF No. 7, ¶¶ 5–6; ECF No. 7-1; ECF No. 8-5. Plaintiff's gene therapy manufacturing process is based out of the site where Defendant worked, and information about this process is highly sensitive. ECF No. 6, ¶¶ 4–5. Placing this information in the hands of a competitor would deprive Plaintiff of the significant value of maintaining the secrecy of this information and substantially impair its competitive position in the marketplace. *Id.* ¶ 8. Similarly,

disclosure of customer information would deprive Plaintiff's customers of their competitive advantage, in part due to the confidential nature of Plaintiff's gene therapy formulas. *Id.* Furthermore, disclosure of the confidential information would harm Plaintiff's reputation for confidentiality and security. *Id. See ClearOne*, 710 F. Supp. 3d at 436–37 (finding that loss of goodwill to company from release of sensitive information is irreparable harm).

The risk of harm to Plaintiff is real and imminent. Defendant threatened Plaintiff in writing, stating that he plans to disclose the confidential and proprietary information if Plaintiff fails to meet his demands. ECF No. 8-5. Defendant most recently threatened to disclose the information on a global scale on the date this lawsuit was filed. *Id.* Defendant stated that he is "playing timekeeper" regarding the deadlines he set for Plaintiff to respond. *Id.* For these reasons, Plaintiff has demonstrated that it will suffer irreparable harm in the absence of a TRO.

### C.  Balance of the Equities

"In deciding whether to grant injunctive relief, the Court must weigh the balance of the equities and the relative harms to the parties." *ClearOne*, 710 F. Supp.3d at 437 (citing *Scotts Co. v. United Inds. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002)). Specifically, "[t]he Court must balance the harm suffered to the plaintiff if the TRO is improperly denied against the harm to the defendant if the TRO is improperly granted." *Id.* (citing *Scotts Co.*, 315 F.3d at 283–84). The court may also consider the strength of the likelihood of success on the merits when assessing this factor. *Id.* (citing *Scotts Co.*, 315 F.3d at 285).

Here, Plaintiff's likelihood of success in this litigation is strong. *See supra*. Further, absent immediate injunctive relief, Plaintiff's business will likely suffer substantial hardship as it faces the loss of highly sensitive trade secrets and the competitive advantage this confidential information provides. The Court does not find that Defendant would suffer any harm from a TRO

8

that merely forbids him from accessing, using, or disclosing this information, even if it turns out that the TRO was improperly granted. Following the termination of his employment, Defendant has no apparent legitimate interest in Plaintiff's trade secrets. Thus, the balance of the equities favors entry of a TRO.

### D.  Public Interest

Judges in this district have recognized that "the public interest favors the protection of trade secrets, and the prevention of unfair business practices." *Brightview Grp.*, 441 F. Supp. 3d 115, 142 (D. Md. 2020), *quoted in ClearOne*, 710 F. Supp. 3d at 438. Further, "the public interest is served by protecting confidential information as well as enforcing valid contracts." *Paradyme Mgmt., Inc. v. Curto*, Civ. No. PWG-17-3867, 2018 WL 9989655, at *9 (D. Md. Jan. 17, 2018) (collecting cases).

Here, Plaintiff seeks a TRO to protect its confidential information and trade secrets and to enforce Defendant's contractual obligations. These interests are generally aligned with the public interest. At the same time, there is no public interest in permitting Defendant to "profit[] off of misappropriated confidential customer data in violation of [his] contractual obligations and trade secrets laws." *ClearOne*, 710 F. Supp. 3d at 438. The Court finds that the public interest weighs in favor of granting a TRO.

## IV.    CONCLUSION

Because the *Winter* factors weigh in favor of preliminary injunctive relief, Plaintiff's emergency motion for a TRO will be granted, in part.[3]

A separate Order will follow.

July 23, 2025
_____
Date

_____
Matthew J. Maddox
United States District Judge

---

[3] Plaintiff's proposed TRO includes a provision directing Defendant to "immediately return to Plaintiff all removed Company confidential and proprietary information in Defendant's possession or control." ECF No. 2-2. Without giving Defendant an opportunity to be heard, and based on the limited evidentiary record presently available, the Court declines to include this provision in the TRO it will grant. The Court will consider including this provision in any forthcoming preliminary injunction, after notice is provided to Defendant and he is given an opportunity to be heard.