IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Northern Division)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:
CATALENT PHARMA SOLUTIONS, LLC   :   Case No. 1:25-cv-02394
:
                Plaintiff,   :   Hon. Matthew J. Maddox
:
  v.   :
:
BEN WOODARD,   :
:
                Defendant.   :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF CATALENT PHARMA SOLUTIONS, LLC'S
RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**

Plaintiff Catalent Pharma Solutions, LLC ("Catalent" or "the Company") submits this response to Defendant Ben Woodard's ("Defendant") Supplemental Brief pursuant to this Court's August 1, 2025, Amended Temporary Restraining Order ("Amended TRO") (ECF No. 31).

### Introduction

In his Supplemental Brief, Defendant does not dispute that a preliminary injunction should be entered but argues that he is "entitled to retain a select number of specific documents" to pursue an "abusive discharge" claim related to his escalating concerns within Catalent about pump calibration, "which were later validated by the FDA in a 2025 Form 483 inspection." (ECF No. 35 at 2–3.)

Even with the assistance of counsel now, Defendant simply rehashes the same arguments that he made—and which the Court rejected—at the hearing on August 1, when the

1

Court expanded the temporary restraining order and required Defendant to be dispossessed of <u>all</u> Catalent confidential information.  If anything, the Supplemental Brief and the Counterclaim filed on August 14, 2025 (ECF Nos. 35 and 36) support Catalent's position: Defendant acknowledges his focus was the pump calibration issue he discussed internally at Catalent that was "later validated" by the FDA, thus admitting that he did not raise the concerns to regulators and that the FDA <u>already knew</u> about the concern he now claims he wants to raise with the FDA. And while he never reported his concerns to the government, the Defendant *did* use the documents in an effort to extort Plaintiff for more than $40 million—a fact that he does not deny in his Supplemental Brief and which reveals his true intent for stealing Catalent's trade secrets. Defendant's post hoc effort to cloak himself as a whistleblower and use this preliminary injunction hearing to gain discovery for a defective retaliatory discharge claim lacks any factual or legal support.

        The Court has twice found that Plaintiff has met the standard for issuing a preliminary injunction, and the Supplemental Brief offers no reason or new argument to the contrary.  All stolen documents are being preserved by both Catalent and the Court.  The Defendant can seek to access those documents during the normal discovery process. Accordingly, Catalent respectfully requests that the Court enter a preliminary injunction equal in scope to the Amended TRO, with no allowance for Defendant to regain any of the stolen documents.

I.       **The Stolen Documents Do Not—As a Matter of Law—Support an Abusive Discharge Claim**

        The argument at the core of the Supplemental Brief is that Defendant intends to use some of the documents that he stole "so that he may pursue a claim for 'abusive discharge' under

Maryland common law." (ECF No. 35 at 2.) Even though Defendant has now asserted such a claim, that still does not entitle him to the relief he seeks with respect to the Amended TRO.

Defendant repeatedly asserts that he is "legally entitled" to "retain"[1] the stolen documents to pursue an employment claim. (ECF No. 35 at 2–3, 5.) However, Defendant provides no support for this "legal entitlement" nor could he.[2] Courts have routinely held that a party "anticipating litigation may not engage in self-help by improperly gathering a potential adversary's property . . . It amounts to an end-run around the Federal Rules of Civil Procedure, including the rules governing discovery and the orderly exchange of information relevant to disputes presented for resolution in our courts." *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1317 (D. Utah 2016), *aff'd*, 890 F.3d 868 (10th Cir. 2018); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 697, 704 (E.D. Va. 2007) ("an employee, even if aggrieved, should not engage in self-help by wrongfully retaining an employer's documents, but instead the employee should file suit and seek the documents via subpoena"). Moreover, where an employee has signed a confidentiality agreement with their employer, such as here, the "employee cannot retain documents in violation of a confidentiality agreement for the prosecution of a lawsuit against the employer." *Woods v. Boeing Co.*, No. 2:11-cv-02855-RMG, 2013 WL 5332620, at *3 (D.S.C. 2013). The stolen documents have been preserved both by Catalent and by the Court and are not at risk of corruption or destruction. (Tr. at 112:8-21, Aug. 1, 2025.) Should Defendant request access to the documents

---

[1] Defendant's statement that he is entitled to "retain" certain documents suggests that he continues to possess certain confidential information in violation of the Amended TRO and Defendant's declaration executed on August 1, 2025.

[2] Defendant cites two cases for the proposition that he may pursue an "abusive discharge" claim. *Terry v. Legato Systems, Inc.*, 241 F. Supp. 2d 566, 572 (D. Md. 2003); *Adler v. American Standard Corp.*, 291 Md. 31, 47 (1981). Both cases, however, merely recognize "abusive discharge" or "wrongful discharge" as causes of action in Maryland; neither case provides support for Defendant's requested modification to the Amended TRO.

3

for his abusive discharge claim (which is unlikely to survive a motion to dismiss), he can make such a discovery demand when permissible under the Federal Rules of Civil Procedure.

The motion for a temporary restraining order and preliminary injunction was filed by Plaintiff in connection with its claims relating to trade secrets and theft of company property. Any allegations of wrongful termination have no bearing here.

And while it is not necessary for Plaintiff to prevail here, there is a second, independent reason for denying Defendant's request. Namely, Defendant's newly filed claim for abusive discharge is based on the concerns he raised internally within the company, and accordingly, it should be dismissed.[3] As noted in case law cited by Defendant himself in his Supplemental Brief, it is well established that "terminating an employee for reporting suspected misconduct to superiors inside the company is *not* a violation of public policy and does not support a claim of wrongful discharge." *Terry*, 241 F. Supp. at 570 (underscoring added) (citing *Wholey v. Sears Roebuck*, 370 Md. 38, 43 (2002)); *see also Siatkowski v. Johns Hopkins Univ.*, No. SAG-25-00313, 2025 WL 2257624, at *3 (D. Md. Aug. 7, 2025) (same); *Annan v. Capital One Bank*, No. TDC-19-1329, 2020 WL 5407901, at *4 (D. Md. Sep. 9, 2020) (same). Rather, it is the act of reporting compliance violations to government officials—which Defendant did not do—that is protected conduct under Maryland employment law.

---

[3] In Defendant's counterclaim, he asserts that he refused to input certain information in internal documents because, in his opinion, doing so would violate federal law. (ECF No. 36 at ¶ 10.) However, Defendant does not allege that anyone at the Company required him to engage in unlawful conduct, knew he was refusing to input flow rates, or that his employment was terminated because of his refusal to do so. For these and other reasons, Defendant's abusive discharge claim will likely ultimately be dismissed. *See*, *FTI Consulting v. Orszag*, No. 23-3200-BAH, 2025 WL 2085761, at *9 (D. Md. Jul. 24, 2025) (dismissing an abusive discharge claim where plaintiff "does not suggest, for instance that he refused to violate the law or to harm a third party and that he was consequently fired"); *Terry v. Legato Sys. Inc.*, 241 F. Supp. 2d 566, 570 (D. Md. 2003) ("Under Maryland law, the employee must allege that his employer *asked him to do something unlawful* and discharged him for refusing").

For the reasons stated above, Defendant's request for access to stolen documents in order to support a wrongful termination claim is procedurally impermissible and legally irrelevant.

## II. Defendant Intended to and Engaged in Extortion—Not Whistleblowing

The only intention evidenced by Defendant when he possessed the stolen documents was to extort the Company for $40,000,900. (ECF No. 8-5.) Now, he asks to be granted access to those same stolen documents "so that he may pursue claims for unlawful termination." (ECF No. 35 at 2.) As the Court recognized (Tr. at 83–84, Aug. 1, 2025), neither of these intentions are protected under the Defend Trade Secrets Act, which provides that disclosure of trade secrets is permitted if it is made "in confidence to a Federal, State, or local government official" and "solely for the purpose of reporting or investigating a suspected violation of law." 18 U.S.C. § 1833(b)(1)(A). Defendant satisfies neither element.

Here, the best and only proof of Defendant's intent is his own indisputable actions and inactions. In Defendant's correspondence with the Company following his termination, he twice used the documents to try to extort Catalent. (ECF No. 8-5.) Defendant has not alleged that he used the stolen documents to contact the government—before or after the termination of his employment. Rather, Defendant demanded a "$40,000,900 lump sum payment" or else Defendant would "begin discussing" the content of the documents with his "colleagues in regulatory bodies, pre-engaged legal representatives, friends in biopharma media, and university peers" comprising his "entire professional network spanning across federal, academic, and industry sectors." (*Id.*) Whistleblowing statutes were not designed to protect former employees who attempt to shield themselves while threatening or extorting their employers. *Nelson v. Nat'l Car Rental Sys.*, No. 05-00374 JMS/LEK, 2006 WL 1814341, at *3 (D. Haw. Jun. 30, 2006); *Wolcott v. Champion Int'l*

*Corp.*, 691 F. Supp. 1052, 1066 (W.D. Mich. 1987); *Shallal v. Catholic Soc. Servs. of Wayne Cnty.*, 455 Mich. 604, 622 (1997).[4]

Whistleblower activity also does not shield bad faith conduct where someone misappropriates a wide swath of documents rather than only the narrow universe pertaining to the concerns at issue. *Compare Deltek, Inc. v. Dep't of Labor, Admin. Rev. Bd.*, 649 F. App'x 320, 332 (4th Cir. 2016) (finding former employee took only documents relevant to whistleblowing reports and where there was reasonable concern that the documents would be destroyed, rather than a situation "in which courts had deemed employees unprotected when they indiscriminately misappropriated documents containing proprietary information" (citation omitted)) *with Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1062 (9th Cir. 2011) ("vast and indiscriminate appropriation" is "overbroad and unreasonable"); *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1318-19 (D. Utah 2016) ("[C]ollection of over three hundred documents—many of which contain sensitive business and personal information—was improper for a whistleblower, let alone for a potential litigant."). Here, Defendant is known to have stolen at least 373 documents and emails from Catalent. (ECF Nos. 31-1, 31-2.) By his own admission, he acknowledges that at most 46 documents, comprising only about 12% of the total stolen documents, are allegedly relevant to Defendant. (ECF No. 35 at 6.) The indiscriminate taking of the other 88% of documents, where there is no allegation or evidence that the documents would be altered or destroyed, is not indicative of an intent to contact government officials on a discrete issue, as Defendant now asserts.

---

[4] Defendant seeks to distinguish these cases, which were cited in Plaintiff's initial filings, based on factual differences. However, those factual distinctions do not detract from the underlying principle of those decisions, *i.e.*, that whistleblowing statutes were not designed to protect employees who seek to extort their employers.

As noted above and in Defendant's counterclaim, Defendant states that his substantive concerns related to a pump calibration issue. (ECF No. 35 at 2, 4, ECF No. 36 at ¶¶ 7–10.) Defendant acknowledges that these concerns "were later validated by the FDA in a 2025 Form 483 inspection"—thus acknowledging that he knew that the FDA was <u>already aware</u> of the substance of his concerns prior to the termination of his employment and his theft of the documents. (ECF No. 35 at 2, 4, ECF No. 36 at ¶ 8.) It is a commonsense proposition that one cannot claim to be a protected whistleblower for threatening to tell the government something that it already knows. While this requirement is not set forth explicitly in the DTSA—perhaps because it is so obvious—it is recognized in other whistleblowing statutes and case law. *See, e.g.*, 17 C.F.R. § 240.21F-4(b)(1)(ii) (whistleblowing claims to the U.S. Securities and Exchange Commission ("SEC") must be based on information "[n]ot already known to the [SEC] from any other source"); *United States ex rel. Schnupp v. Blair Pharmacy*, No. ELH-17-2335, 2025 WL 375927, at *17-25 (D. Md. Jan. 28, 2025) (recognizing that the original source requirement to the public disclosure bar in the False Claims Act prohibits a relator from bringing a claim if the government already knew about the information); *Hicks v. District of Columbia*, 306 F. Supp. 3d 131, 150 (D.D.C. 2018) (under the DC Whistleblower Protection Act, statements are not protected disclosures if they were already known to the person to whom they are reported).

Further, in the unlikely event that Defendant attempts to share his concerns in the stolen documents with the FDA, the FDA is unlikely to take any additional actions beyond what it has already done. The FDA was aware of the pump calibration point. It was noted as an observation on an FDA Form 483, and Catalent submitted a response detailing how it is remediating the observation. Catalent's response is likely to be found adequate by the FDA and no further action warranted. (*See* Ex. A, Fritz Decl. at ¶ 12(d).) An FDA Form 483 observation is

not itself definitive evidence that Catalent is not in compliance with regulatory requirements. (*Id.* at ¶ 8.) It is typical for the FDA to note observations during inspections, even the most minor, and, as part of a well-functioning quality system, companies such as Catalent often remediate the observations without further FDA action or adverse consequences. (*Id.* at ¶¶ 9–10.) Defendant's misplaced focus on the impact of an FDA Form 483 observation is emblematic of Defendant's apparent broader misunderstanding of quality systems and regulatory requirements. For example, some of the regulations Defendant cites in a subset of the stolen documents that he authored while employed Catalent, and regulations he cites in the Supplemental Brief, pertain to medical devices or animal testing—neither of which are relevant to pharmaceutical manufacturing at Catalent. (*Id.* at ¶¶ 12(e), 13.) The stolen documents illustrate, above all, that Catalent was appropriately addressing areas of improvement that it found in the ordinary course of business as part of its quality system. (*Id.* at ¶ 12(a).)

### III. The Stolen Documents Contain Trade Secrets

Defendant has not seriously disputed that the documents he stole contained trade secrets. Nor has he offered any evidence that would refute the evidence provided by Plaintiff in this regard. We note, however, that the Supplemental Brief asserts in a parenthetical that the documents "very likely do not qualify as 'trade secrets' under 18 U.S.C. § 1839(3) in the first instance as they are not, *e.g.*, Catalent standard operating procedures and design schematics, Emergency Change Control Forms, client information, etc." (ECF No. 35 at 4.) This parenthetical statement is not evidence, and is disputed by all evidence on the record and relevant authorities, as summarized below.

The stolen documents are trade secrets as Catalent has (1) taken reasonable measures to keep them secret and (2) the documents derive "independent economic value" from

not being generally known or ascertainable outside of Catalent. 18 U.S.C. § 1839(3). For example, Catalent requires its employees (including Defendant) to sign Confidentiality Agreements prior to accessing documents, grants specific access permissions based on employee roles, walls off employees from client projects when necessary, houses documents in a password-restricted system, and utilizes commercial cybersecurity solutions to protect against unauthorized access. (ECF No. 7 at ¶¶ 3–4, ECF No. 8-3, ECF No. 35-1 at ¶¶ 4–7); *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 97 (4th Cir. 2018) ("a company's imposing a confidentiality policy and restricting access to electronic documents contribute[s] to finding the documents at issue [are] trade secrets," specifically where the company gives only certain employees access to the documents). The Confidentiality Agreement signed by Defendant states that Catalent "possesses its own confidential information and also regularly receives confidential information from its customers and suppliers," and that "[u]pon termination of employment, Employee will immediately return to Employer all Confidential Information in the possession or control of Employee." (ECF No. 8-1.)

Catalent takes these measures to control its Confidential Information because, should the stolen documents be obtained by competitors, they have "independent economic value" as they can be used to obtain a competitive edge. *See Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 539-40 (D. Md. 2023) (finding the information to constitute trade secrets where access to the company's information would allow competitors to "gain a competitive edge.") The information in the stolen documents contains confidential and proprietary information related to Catalent's overall quality and manufacturing processes. (Ex. A, Fritz Decl. at ¶ 12(b)-(c).) Should competitors obtain this information, it could be worth millions of dollars in intellectual property damage because competitors could use it to better

compete against Catalent in manufacturing some of the most technically challenging-to-make products. (*Id.*) Contrary to Defendant's brief assertion, the stolen documents contain trade secrets as defined under DTSA.

## IV.     Conclusion

Defendant's Supplemental Brief does not dispute that a preliminary injunction should be issued, and it raises no new argument for allowing Defendant to possess any Catalent confidential information. For the foregoing reasons, Catalent respectfully requests that this Court enter a preliminary injunction consistent with the Amended TRO.

Dated: August 14, 2025                                      Respectfully submitted,

*/s/ Paul A. Solomon*
Paul A. Solomon (Bar No. 19920)
Darren M. Welch (*Attorney Admission Pending*)
Bryan A. Burcat (*Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.,
Washington D.C., 20005
Telephone:     (202) 371-7000
Facsimile:     (202) 393-2760
paul.solomon@skadden.com

*Counsel for Plaintiff*
*Catalent Pharma Solutions, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2025, I caused the foregoing document to be electronically filed and served upon all counsel of record via the CM/ECF electronic filing system.

DATED: August 14, 2025                                          */s/ Paul A. Solomon*
                                                                                    Paul A. Solomon